### ABANDONMENT OF EASEMENT BY RAILWAY COMPANY.

Court of Appeals for Hamilton County.

MARY KNEPFLE ET AL V. THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY; AND ZARUM SIMONSON V. THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY.

Decided, July 12, 1916.

*Canal Right-of-Way Acquired by Railway—Plot of the Canal Land Not Used by the Railway—Circumstances Which Are Held to Show Intention to Abandon its Easement Therein—Prescriptive Rights also Acquired by Adjacent Owners Who Appropriated the Land to Their Own Use.*

A railway company appropriated an old canal bed with all the privileges and appurtenances of whatever nature connected therewith, which included a basin containing about ten acres of land theretofore used in turning boats. The basin was not needed by the railway, and in time dried up, and was continuously farmed by the adjacent owners for almost fifty years, when the railway asserted title to an easement therein, and caused this land to be transferred to its name for taxation. During the long interval the railway had been required to fence its road, and in doing so built a fence which followed the line of the railway track, and did not include the basin. In an action by the adjacent owners, whose deeds covered this basin, to have their titles quieted, *Held*:

That the railway company in taking over the right-of-way of the canal company, which included this tract of land, took more than it needed or has had occasion to use, and by its acts in not including this land with its own property for taxation, and in placing its fence as it did, and in permitting others to use the land without hindrance, evinced an intention to abandon its easement therein, and the plaintiffs are entitled to a decree quieting their title as against such easement.

*Michael Minges* and *Albert A. Graef*, for plaintiffs.
*Harmon, Colston, Goldsmith & Hoadly*, contra.

Jones (E. H.), P. J.

The above two cases come into this court on appeal from the court of common pleas, and by agreement were heard together, as they involve the same questions, and the same evidence is entirely applicable to both.

The actions are brought to quiet title in the plaintiffs as against the adverse claim of the defendant—in the Knepfle case, to 5.11 acres and in the Simonson case 4.23 acres of land. The evidence establishes the fact that this land in controversy was from about the year 1838 to 1863 a part of the right-of-way of the Cincinnati & Whitewater Canal Company and was covered by the waters of said canal, was a part thereof, and was used by said company in the conduct of its business, principally for the purpose of turning boats.

On July 1, 1863, the Cincinnati & Indiana Railroad Company determined to build a branch railroad, running from a point where its main line road, running west from Cincinnati, left the bed of the Cincinnati & Whitewater canal to the village of Harrison; and on said day the board of directors of said railroad company passed a resolution which in effect appropriated all that portion of the Cincinnati & Whitewater canal commencing at the point named, which has since been known as Valley Junction; thence following the line of the canal to the village of Harrison, together with the two banks and basin of said canal, all its locks, gates, aqueducts, viaducts, bridges, mill sites and privileges, water power, and other rights, privileges and appurtenances and property of whatever name and nature. Later there was paid to the Cincinnati & Whitewater Canal Company the sum of $5,000 for the property so conveyed by the canal company to it.

Thereafter on January 1, 1877, the Cincinnati & Indiana Railroad Company conveyed to the Harrison Branch Railroad Company the right-of-way and land *occupied or used by the Harrison Branch Railroad Company for a railroad,* extending from its intersection with the railroad of the Cincinnati & Indiana Railroad Company at Valley Junction to the village of Harrison,

together with all privileges and appurtenances to the same be-
longing, etc.

On the same day the Harrison Branch Railroad Company
leased to the Cincinnati & Indiana Railroad Company the same
property for a term of ninety-nine years, renewable forever.

On December 31, 1912, the Harrison Branch Railroad Com-
pany conveyed all its property to the present defendant. The
property conveyed is thus described in the deed:

"The railroad of the grantor company extending from a point
of connection with the Cleveland, Cincinnati, Chicago & St.
Louis Railway, at Valley Junction in Hamilton county, Ohio,
to a point on the state line between Indiana and Ohio in the
village of Harrison in said county; together with all and singu-
lar the properties real and personal, rights, franchises, interests
and estates appertaining to or used in connection with said rail-
road herein conveyed or intended so to be (except the franchise
to be a corporation), including roadbeds, superstructures, rights
of way, tracks, bridges, viaducts, buildings, structures, fixtures
and appurtenances, locomotives, cars and other rolling stock,
tools, machinery supplies, materials and other chattels connected
with, appurtenant to or used in connection with said railroad or
belonging to or possessed by the grantor company; and all prop-
erty, real or personal, wherever situated, or interest or estate
therein, by the grantor company owned or possessed; and all
rents, issues, profits, tolls and. other income of said railroad,
properties, rights, franchises, interests and estates; together
with all and singular, the tenements, hereditaments and appur-
tenances of said railroad and properties, and the reversion or re-
versions, remainder or remainders."

Plaintiffs, Mary Knepfle and others, bought the farm now
occupied by them under a description which makes no reference
to a canal right-of-way or a railroad right-of-way, by a deed
which bears date May 22, 1897; and plaintiff Simonson bought
the farm now owned by him by deed which likewise makes no
reference to the right-of-way either of the railroad or canal and
which was dated February 21, 1901. The boundaries of the
farms conveyed by these deeds, according to the descriptions
therein contained, included the tracts of land involved in this
controversy.

It also appears from the testimony that in 1863, at the time the canal company sold out to the railroad company or very soon thereafter, the water was let out of the canal; that for some time thereafter the property in question (the former canal basin) was a low, wet place in which water stood, but that in course of time it became dry and was farmed by the owners of the fee, and was used and controlled by them as fully and in the same manner as they used and occupied the rest of their respective farms.

In 1912, at the time of the transfer to the defendant from the Harrison Branch Railroad Company, the defendant had a survey and plat made of its property, and the same was duly placed upon record. Thereafter, upon representations made by the defendant to the County Auditor of Hamilton County, Ohio, the property in dispute was removed from the tax duplicate in the names of the plaintiffs, and they thereupon brought these suits to quiet the titles they claim to hold to the property in question, making the railroad company party defendant thereto. The railroad company answered, setting up, first, that it owns the property in question; and second, that it has been in the open, notorious and adverse possession of it for more than twenty-one years last past.

Plaintiffs base their right to have their titles quieted upon four main grounds: first, they say that defendant has no title to the properties in question; second, that the plaintiffs are purchasers for value without notice; third, that the acts and conduct of the canal company in disposing of its rights to the Cincinnati & Indiana Railroad Company, predecessor of the defendant, followed by the failure and neglect of the defendant and its predecessors to occupy either or any part of the parcels of land in question, amounted in law to an abandonment of its right; fourth, they claim to have obtained title by actual, open, notorious, continuous, exclusive and adverse possession for more than twenty-one years.

According to the view that this court takes of these cases, we deem it unnecessary to discuss or determine the first two con-

tentions of the plaintiffs. The defendant only claims an ease-
ment in this land. The record shows beyond question that the
fee of this land has always been in the plaintiffs and their prede-
cessors in title. Whether when plaintiffs purchased this land
(the Knepfles in 1897 and Simonson in 1901) they took the
title with record notice of an easement therein is immaterial,
if from an examination of the questions of abandonment and ad-
verse possession the court find upon the issues joined in this ac-
tion in favor of the plaintiffs at this time. Such is the situation;
so we deem it unnecesary to enter into a discussion as to whether
or not the plaintiffs were purchasers without notice. Upon this
point we simply say that we have examined this record rather
carefully, including the exhibits which are made a part there-
of, and can not recall any public record which could be consid-
ered notice, nor do we think the record shows any physical fact
which would put the present owners upon inquiry or be notice
to them, except as to the strip enclosed by the railroad company
and necessarily used and occupied by it in the operation of its
road.

The question of abandonment must be determined by the
facts and circumstances peculiar to each case.

In the case of *Junction Railroad Co.* v. *Ruggles*, 7 O. S., 1,
the court in its opinion on page 11, says:

"Doubtless a right-of-way, like any other right of property,
may be abandoned; and such abandonment, which depends on
the intention of the owner, may be inferred from the lapse of
time or other circumstances indicative of an intention on the
part of the grantee to abandon."

The same principle is announced in *Garlick* v. *Railroad Com-
pany*, 67 O. S., 223. On page 235 of the opinion the court says:

"The question of abandonment is eminently one of intention."

And then it quotes the following on page 707 of *Washburn's
Easements & Servitude:*

"It is not easy to define in all cases what would be such act
of abandonment as would destroy a right of easement, and each

case seems to be a matter for a jury to determine. But nothing short of an intention to so abandon the right would operate to that effect, unless other persons have been led by such acts to treat the servient estate as if free of the servitude, and the same could not be resumed without doing injury to their rights in respect to the same. And in this it is not intended to embrace questions which may arise from a mere non-user of an easement."

In this connection see also: *Hatch v. Railroad Co.*, 18 O. S., 121.

In the light of this doctrine, which as applied to this case makes the claim of abandonment depend upon the intention of the railroad company, let us look briefly at the facts as here presented: The railroad company of course had no use for a canal basin. When the canal was abandoned and turned over to the railroad company and a railroad was constructed thereon operating its cars by steam, the canal basin as such was abandoned. Steam was substituted for the mule, and wheeled cars for the boat. The railroad company no longer needed the basin. And from 1863 to 1912, the date of the bringing of this action, not a single act was ever performed by the railroad company that could be considered as an act of ownership with reference to this property. The owners of the fee occupied the land, cultivated it, pastured it, gathered the crops from it, enclosed it with fences and, as said before, used it in exactly the same manner as they did the rest of their farms. A few years before this action was brought the plaintiffs through an attorney ordered the defendant to build a fence separating its right-of-way from this land. This demand was made under the provision of the statute which requires a railroad company to fence its right-of-way, and was complied with promptly and without any protest on the part of the railroad company.

There is not one syllable in the record which shows that the defendant company, or its grantors, by word or deed for over fifty years prior to the commencement of this action ever said or did anything indicating that it made any claim to the property in question. It was the action of the railroad company in hav-

ing the county auditor remove this land from the tax duplicate in the names of the plaintiffs that precipitated this law suit. If instead of doing that the railroad company had sold this tract of ground to the Cincinnati, Lawrenceburg & Aurora Railroad Company, whose right-of-way abuts this tract of ground on the north, for depot purposes or for switches and terminals, then it seems to us that the case would be covered entirely by the decision of our Supreme Court in *Platt* v. *Pennsylvania Company,* 43 O. S., 228. As it is, counsel for plaintiffs rely upon this last cited case, while their adversaries make the claim that it has no application to the facts in the case at bar. We are inclined to think, however, that it has a strong bearing upon the determination of the question here presented. The Lake Shore Railroad Co. in the latter case had appropriated a strip of ground one hundred feet wide for its right-of-way. It built its track, and in so doing used only fifty feet, which it maintained as its r'ght-of-way for over twenty-one years, when it sold to the Pennsylvania Railroad Company twenty-five feet of the strip originally appropriated. An action was brought by Oliver, the owner of the fee, to recover damages, wherein it was held that—

"the fact that it became evident subsequently to an appropriation that the company had appropriated more land than was necessary for its use, and would not need a particular specified part of the strip appropriated for any purpose for which the appropriation was made, will not authorize the company to sell in perpetuity such surplus part to another railroad company. * * * The land owner is not authorized to recover by civil action such surplus or enjoin the operation of such railroad thereon, but he may by action treat the transaction as an abandonment of such surplus by the first company and its appropriation by the last company, and recover damages as upon an appropriation."

The reason given why the lessor could not recover the land was that he had stood by and seen the investment by the Pennsylvania Company of a vast amount of money, before complaining.

We think that in so far as it was held by the Supreme Court that the non-user by the Lake Shore Company for so many

years, of this twenty-five-foot strip, showed that it. was unnec-
essary to the operation of its road and was in effect an abandon-
ment ·of the same by it, the case is instructive here and furnishes
authority for the decision reached by us in this case, viz., that
the non-user of this land for practically a half century by the
defendant and its predecessors must be taken as a manifesta-
tion of an intention to abandon the same.   The railroad company
when it took over the right-of-way of the canal company in 1863,
in taking the canal basin took that which it did not need in con-
nection with the operation of its road, and in the light of the
evidence in this case as briefly reviewed above it must be held
to have abandoned the land herein .involved, or its easement
therein, long before this action was commenced, and plaintiffs
are entitled to a decree quieting the title in them.

This determines these cases, but since the claim of title by
prescription is so strongly urged and fully discussed in the
briefs on both sides, it is well to say that we are strongly in-
clined to the opinion that the claim of plaintiffs in this regard is
established and sustained by the evidence.   As already stated,
the predecessors in title of the plaintiffs shortly after the water
was let out of the canal reclaimed the basin as a part of their
respective farms and used it continuously, openly and notoriously,
not only for twenty-one years but for more than twice that
length of time prior to the beginning of this action.   It is claimed
by the defendant that this occupancy was not adverse.   It is true
that this necessary element is not as clearly shown by the evi-
dence as that the possession was open, notorious and continuous,
but the evidence shows that for more than twenty-one years
prior to any assertion of this kind on the part of the railroad
company the then owner of each part of the former basin dug a
well on his respective portion and has ever since maintained the
same.   They constructed across the land—it being low-lying
land—foot bridges by means of which they and other residents
of the vicinity could reach a railroad station near by.   They
ordered the railroad company, as owners of adjoining land are
empowered ·to do under the statute, to build fences along the

right-of-way as then in use. They connected these fences in such a way as to completely enclose the land in controversy. They paid the taxes for all these years. And in this connection it is worthy of mention that the evidence does not show that the railroad company at any time included this property in its statement or return for taxation required under Section 5422, G. C. It is fair to assume that no return was made by the railroad company of this land or of its easement therein, there being a total absence of evidence to that effect. We will not assume that this omission was an attempt deliberately made to avoid taxation on this land, but rather believe it to have been due to the fact that the company had abandoned all claim to the land. This omission to include this land in its reports to the tax authorities is one of the strongest indications of abandonment that the evidence or lack of evidence presents, and should have been included in the statement of facts and circumstances supporting the plea of abandonment.

As indicated above, we are not as clear as to the rights of the plaintiffs under the claim of adverse possession as under that of abandonment. Our position is quite similar to that of the circuit court of this county in the case of *Tudor Boiler Mfg. Co.* v. *I. E. Greenwald Co.,* 5 C.C.(N.S.), 37. That case involved a right-of-way, and the court had under consideration in connection therewith the subjects of abandonment and title by prescription. They found in favor of the Greenwald Co. on both of these defenses, but that the stronger defense was made out in favor of abandonment. On page 43 the court say:

"On this issue the court is not so strong in its conclusion as on the issue of abandonment, but on this, too, we find in favor of the defendant."

That sentence expresses the attitude of this court in the instant case, except that our finding is for the plaintiffs.

Every act of ownership or dominion over this property for more than fifty years has been performed by the plaintiffs, and we are inclined to think that these acts of dominion and ownership by the occupants of the land, taking all of the evidence into

consideration, were adverse, and therefore hold that the plaintiffs have obtained whatever title or easement the defendant or its predecessors may have had in this canal basin, by prescription. As an example of the holding of the Supreme Court in regard to the principle that title to an easement may be acquired by adverse possession, see journal entry in *County Commissioners v. C., H. & D. R. R. Co.,* 92 O. S., 513.

Somewhere in the record it is said that the action of the county auditor, taken in 1912, in removing this land from the tax duplicate in the names of plaintiffs and transferring it to the defendant, was taken under authority of Section 8821, G. C. An examination of that section will show that it applies only to land actually in use by a railroad company, and it therefore furnishes no authority for any action in this kind of a case. The action of the railroad company in making the application for the transfer was a sufficient assertion of claim to constitute a cloud upon the title and form a basis for this action, especially in view of the fact that the application was granted by the county auditor and the transfer was made.

For the reasons above stated we find that the titles of the plaintiffs should be quieted as prayed for in their respective petitions.

JONES (Oliver B.), J., and GORMAN, J., concur.